**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **JEANETTE ACEVEDO-CANDELARIO,**<br><br>Plaintiff,<br><br>v.<br><br>**JULIO ROLDÁN-CONCEPCIÓN** in his personal and official capacity as Mayor of the City of Aguadilla, **GRISELL LAUSELL**, in her personal and official capacity as Human Resources director of the Municipality of Aguadilla, **THE MUNICIPAL GOVERMENT OF AGUADILLA.**<br><br>Defendants. | Civil No. 24-1268 (MBA) |

**OPINION AND ORDER**

Jeanette Acevedo-Candelario ("Acevedo") brought this civil action against Julio Roldán-Concepción, in his personal and official capacity as Mayor of the City of Aguadilla ("Roldán"); Grisell Lausell, in her personal and official capacity as Human Resources Director of the Municipality of Aguadilla ("Lausell") (collectively "Defendants"); and the Municipal Government of Aguadilla ("Aguadilla"), under 42 U.S.C. § 1983 for violating her First Amendment rights. (ECF No. 1). Acevedo also alleged violations of Act 90-2020, P.R. LAWS ANN. tit. 29, §§ 3111, et seq.; Article 1536 of the Puerto Rico Civil Code, P.R. LAWS ANN. tit. 31, § 10801; and Sections 1, 4, 6, and 7 of Article II of the Constitution of the Commonwealth of Puerto Rico, P.R. CONST. art. II, §§ 1, 4, 6, 7. (*Id.* ¶ 1). Acevedo sought injunctive relief in the form of enjoining Defendants from discriminating against her and reinstatement to her position, as well as monetary damages. (*Id.* ¶¶ 2-3). The Defendants, in their personal capacities, moved to dismiss the action for failure to state a claim upon which relief could be granted under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 14). Acevedo opposed. (ECF No. 24).

For the reasons set forth below, the Defendants' Motion to Dismiss is **GRANTED** in part

and **DENIED** in part.

### BACKGROUND[1]

On March 3, 2021, Acevedo began working for Aguadilla as a transitory employee. (ECF No. 1 ¶ 25). Her contract was consistently reupped by Aguadilla without her having to apply for renewal. (*Id.*). And "she was always praised for her good work." (*Id.* ¶ 26). She is also "an active member of the New Progressive Party" (NPP) and identifies "Afro-American or black." (ECF No. 1 ¶¶ 20, 27). But then, around April 2023, some of Aguadilla's employees that were working on Roldán's political campaign for re-election as mayor "began to harass [Acevedo] because of her race and the color of her skin." (*Id.* ¶ 27). Roldán, who is the President of the Popular Democratic Party (PDP) in Aguadilla, did nothing to prevent the racial harassment and Acevedo requested and received a protective order from the Municipal Court of Aguadilla to protect her from "stalking." (*Id.* ¶¶ 21, 28). Acevedo also complained to Lausell, the Human Resources Director, who "told her it was not her fault that she was a black woman and that her contract was not going to be renewed by the mayor because of the complaint she had filed against municipal employees that were of the trust of the mayor." (*Id.* ¶ 29).

After meeting with Lausell, Acevedo went to see Roldán to inquire as to the veracity of these statements and, "[t]o her surprise, the mayor told her that those employees were of his trust, that he will support them in whatever they do and that he was betrayed by her" because "he found out she was actively campaigning for Dennis Morales," one of the New Progressive Party candidates. (*Id.* ¶ 30). He explained that as "a municipal employee, paid by him, that in his book constitutes betrayal." (*Id.*). Acevedo informed Roldán that not renewing her contract because of her court complaint would

---

[1] For purposes of the Defendants' Motion to Dismiss, the facts are taken from Acevedo's Complaint, ECF No. 1, and are presumed to be true. However, for temporal awareness, the Court takes judicial notice of the fact Roldán assumed office on January 11, 2021, and won re-election on November 5, 2024. *Julio Roldan-Concepcion*, BALLOTPEDIA, https://ballotpedia.org/Julio_Rold%C3%A1n_Concepci%C3%B3n [https://perma.cc/6FYG-Y7TT]

be retaliation, that if the decision was based on her party affiliation that would be political discrimination, and that he should not support employees harassing her because of the color of her skin. (*Id.* ¶ 31). Roldán responded "sue me." (*Id.* ¶ 32). Acevedo did just that.

After receiving a letter on June 19, 2023 informing her that her contract expiring on June 30, 2023 would not be renewed, on October 30, 2024, Acevedo filed a complaint against Defendants and Aguadilla, alleging constitutional injury and damages. (ECF No. 1 ¶¶ 1-4, 36). Acevedo specifically complains of "[t]he hostile working environment created by the harassment of the municipal employees, because plaintiff Acevedo-Candelario is Afro-American," which neither Lausell nor Roldán corrected, in violation of Act 90-2020, P.R. LAWS ANN. tit. 29, §§ 3111, et seq.; Article 1536 of the Puerto Rico Civil Code, P.R. LAWS ANN. tit. 31, § 10801; and Sections 1, 4, 6, and 7 of Article II of the Constitution of the Commonwealth of Puerto Rico, and the First and Fourteenth Amendments to the U.S. Constitution. (*Id.* ¶¶ 33-35). Acevedo further claims that "[t]he dismissal of plaintiff for reason of her political affiliation" as well as the nonrenewal of her contract violated these same provisions of law. (*Id.* ¶37-38). In response, Defendants, in their individual capacities, filed a motion to dismiss. (ECF No. 14).[2] Acevedo opposed. (ECF No. 24). For the reasons stated below, the Court agrees in part with Defendants' motion.

## STANDARD OF REVIEW

To survive a motion to dismiss at the pleading stage, "an adequate complaint must provide fair notice to the defendants and state a facially plausible legal claim." *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011). In evaluating a motion to dismiss, the court first sorts out and discards

---

[2] In one of their arguments, Defendants moved to dismiss Acevedo's claim under the Fourteenth Amendment. (ECF No. 14 at 8-10). However, in her opposition, Acevedo indicated she had no substantive Fourteenth Amendment claim; therefore, there is no such claim to dismiss. (ECF No. 24 at 4 ("Acevedo Candelario has not filed any substantive or procedural due process claims under the Fourteenth Amendment in this case.")).

any "'legal conclusions couched as fact' or 'threadbare recitals of the elements of a cause of action.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (alteration marks omitted). The remaining "[n]on-conclusory factual allegations" are fully credited, "even if seemingly incredible." *Id.* (citing *Iqbal*, 556 U.S. at 681). A court must not "forecast a plaintiff's likelihood of success on the merits." *Id.* at 13. Taken together, the allegations must "state a plausible, not a merely conceivable, case for relief." *Sepúlveda-Villarini v. Dep't of Educ. of P.R.*, 628 F.3d 25, 29 (1st Cir. 2010). Achieving this "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Essentially, "where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (citation modified).

Moreover, in prima facie cases such as this one, "[i]t is not necessary to plead facts sufficient to establish a prima facie case at the pleading stage." *Rodríguez-Reyes v. Moline-Rodríguez*, 711 F.3d 49, 54 (1st Cir. 2013) ("Although a plaintiff must plead enough facts to make entitlement to relief plausible in light of the evidentiary standard that will pertain at trial–in a discrimination case, the prima facie standard–she need not plead facts sufficient to establish a prima facie case."). That is because the prima facie case model is an evidentiary standard and not a pleading standard. *Id.* Instead, the requirements of the prima facie case "shed light upon the plausibility of the claim." *Id.* In all, the allegations provided regarding each defendant must be sufficient as to make them a plausible defendant. *Ocasio-Herandez*, 640 F.3d at 16.

## ANALYSIS

### A. Section 1983

Section 1983 in itself does not confer substantive rights, but rather provides a venue for vindicating federal rights elsewhere conferred such that no person acting under the color of state law can deprive others of their rights, privileges, or immunities under the Constitution. *See Graham v. M.S.*

*Connor*, 490 U.S. 386, 393-94 (1989); 42 U.S.C. § 1983. Here, Acevedo invokes Section 1983 to claim that her First Amendment rights were violated by Defendants. (ECF No. 1 ¶¶ 1, 37, 38, 39, 44).

Under the First Amendment, government officials are prohibited "from taking adverse action against public employees on the basis of political affiliation, unless political loyalty is an appropriate requirement of the employment."[3] *Ocasio-Hermandez*, 640 F.3d at 13 (citations omitted). Hence, the First Amendment "embodies the right to be free from political discrimination." *Irizarry-Robles v. Rodriguez*, 233 F. Supp. 3d 296, 300 (D.P.R. 2017). To establish a prima facie case of political discrimination, the plaintiff must prove four elements: "(1) that the plaintiff and defendant have opposing political affiliations, (2) that the defendant is aware of the plaintiff's affiliation, (3) that an adverse employment action occurred, and (4) that political affiliation was a substantial or motivating factor for the adverse employment action." *Lamboy-Ortiz v. Ortiz-Velez*, 630 F.3d 228, 239 (1st Cir. 2010) (citation omitted).

Lausell and Roldán dispute the viability of a political discrimination claim against them, arguing Acevedo has failed to meet essential elements of her political affiliation. (ECF No. 14 at 10). To this, Lausell adds that the decision not to renew Acevedo's contract was made by Roldán and the complaint does not assert that she took any action against Acevedo. (*Id.*). In her opposition, Acevedo in sum relies on the pleading standards she must meet and references her factual allegations and supporting caselaw. (ECF No. 24 at 7-10).

Here, Acevedo provided sufficient allegations to establish that there are opposing political affiliations between the parties. For starters, Acevedo alleged she is an active member of the NPP and campaigned for an NPP candidate for mayor in the NPP primaries. (ECF No. 1 ¶¶ 20, 30-31). Acevedo

---

[3] Acevedo's contentions as to harassment based on race are inapposite to her claim under the First Amendment. Such allegations could be recognizable under Title VII. However, Acevedo brings no such claim.

also alleged that Lausell and Roldán are members of the PDP. (*Id.* ¶¶ 21-22). Thus, taking these allegations as true, Acevedo alleged sufficient facts to establish that there are opposing political affiliations between the parties. Because the sufficiency of Acevedo's remaining allegations is defendant specific, I will analyze her allegations against each defendant individually. *See Ocasio-Hernandez,* 640 F.3d at 16 ("[W]e must determine whether, as to each defendant, a plaintiff's pleadings are sufficient to state a claim on which relief can be granted.") (quoting *Sanchez v. Pereira-Castillo,* 590 F.3d 31, 48 (1st Cir. 2009)); *Penalbert-Rosa v. Fortuno-Burset,* 631 F.3d 592, 594 (1st Cir. 2011) ("[A]n adequate complaint must include not only a plausible claim but also a plausible defendant").

### a. Lausell

Acevedo fails to present a plausible claim against Lausell. The complaint does not allege Lausell was aware of Acevedo's political affiliation. An even clearer hurdle is the absence of an employment decision by Lausell.

To begin with, to prove awareness of her political affiliation, Acevedo need only have "pleaded adequate factual material to support a reasonable inference that the . . . defendants had knowledge of [her] political beliefs." *Ocasio-Hernández,* 640 F.3d at 15. This knowledge, in turn, "may be inferable from other allegations in the complaint." *Rodríguez-Reyes,* 711 F.3d at 55. Acevedo points to the fact that it was Lausell who told her that her contract would not be renewed for filing the complaint against other Aguadilla employees. (ECF No. 24 at 9). In her complaint, Acevedo asserts that Lausell described the employees against whom she filed her complaint as "of the trust of the mayor." (ECF No. 1. ¶ 29). Nothing in that statement indicates any awareness from Lausell of Acevedo's political affiliation. In fact, it is not clear what "of the trust of the mayor" means. What is more, Acevedo's complaint related to harassment is based on her race. (*Id.* ¶¶ 27-28). And in any event, Acevedo does not allege Lausell made any adverse employment action, a gap fatal to her claim. *See Rodríguez-Cirilo v. García,* 115 F.3d 50, 52 (1st Cir. 1997) (requiring plaintiff prove "the defendants' conduct was the

cause in fact of the alleged deprivation").

The occurrence of an adverse employment action is the third element needed to establish a prima facie case of political discrimination. *Lamboy-Ortiz,* 630 F.3d at 239. "Actions short of dismissal or demotion, including denials of promotions, transfers, and failures to recall a public employee after layoffs can constitute adverse employment actions." *Rodriguez-Garcia v. Miranda-Marin,* 610 F.3d 756, 766 (1st Cir. 2010). However, to qualify, those actions must objectively "make an employee's work situation unreasonably inferior to the norm for his or her position, placing substantial pressure on even one of thick skin to conform to the prevailing political view." *Reyes-Orta v. P.R. Highway & Transp. Auth.,* 811 F.3d 67, 75 (1st Cir. 2016) (cleaned up). Hence, while "informal harassment, as opposed to formal employment actions like transfers or demotions, can be the basis for first amendment claims if the motive was political discrimination," these actions must be "'sufficiently severe to cause reasonably hardy individuals to compromise their political beliefs and associations in favor of the prevailing party.'" *Martínez-Vélez v. Rey-Hernández,* 506 F.3d 32, 42 (1st Cir. 2007) (quoting *Agosto-de-Feliciano v. Aponte–Roque,* 889 F.2d 1209, 1217 (1st Cir. 1989) (en banc)). To determine whether the actions are sufficiently severe, the court must evaluate the ways in which the plaintiff's job changed. *Reyes-Orta,* 811 F.3d at 76 (quoting *Agosto-de-Feliciano,* 889 F.2d at 1218).

Here, Acevedo is unequivocal that it was Roldán that made the decision to not renew her contract. (ECF No. 1 ¶¶ 29, 36, 44). She makes no allegation that Lausell took part in that decision, just that she forewarned it. (*Id.* ¶ 29). *See Ocasio-Hernández,* 640 F.3d at 16 ("[E]ach defendant's role in the termination decision must be sufficiently alleged to make him or her a plausible defendant."). Acevedo also complains that Lausell "ignored[d] plaintiff's complaints about the racial harassment that she was being subjected to by her fellow PDPers" and "participated in the racial and political harassment, discrimination and retaliation, telling Acevedo Candelario that it was not defendant's fault that the plaintiff was a black woman, and that her contract would not be renewed because she filed

the complaint against the Mayor's trust employees." (ECF No. 24 at 9). These allegations are insufficient to establish a prima facie case of political discrimination.

The actions Acevedo alleges Lausell made do not meet the standard for "short of dismissal" adverse employment actions. Lausell's statement that Acevedo's race and gender were not "her fault" and foretelling the upcoming nonrenewal of her contract sheds no light on how Lausell harassed Acevedo based on her political affiliation. The single conversation with Lausell cannot be read to place a "substantial pressure on even one of thick skin to conform to the prevailing political view." *Rodríguez-García v. Miranda-Marin*, 610 F.3d 756,766 (1st Cir. 2010) (cleaned up). In *Cordero-Suárez v. Rodríguez*, 689 F.3d 77, 83 (1st Cir. 2012), the First Circuit held that that the plaintiff's allegations that the defendant, a former supervisor, "'came near [her] in an intimidating manner and stared at her fixedly' and his comment that he 'would not rest' until [she] lost her job . . . fall well short of the conduct we have found severe and pervasive in the past" to constitute an actionable hostile work environment. That reasoning controls the outcome here.

Therefore, Lausell's motion to dismiss Acevedo's First Amendment claim against her in her individual capacity is **GRANTED**.

### b. Roldán

Roldán stands apart from Lausell. For starters, Roldán made it clear that Acevedo "betrayed" him by supporting an NPP candidate—the opposing party—for mayor. (ECF No. 1 ¶ 30). And it was he who decided that Acevedo's contract would not be renewed. (*Id.* ¶¶ 29, 36, 44). Roldán's request for dismissal is therefore **DENIED**.

Roldán is also not entitled to qualified immunity. The "[q]ualified immunity doctrine protects government officers and employees from suit on federal claims for damages where, in the circumstances, a reasonable official could have believed his conduct was lawful." *Olmeda v. Ortiz-Quiñonez*, 434 F.3d 62, 65 (1st Cir. 2006) (citing *Rodríguez-Rodríguez v. Ortiz-Vélez*, 391 F.3d 36, 41 (1st

Cir. 2004)). Qualified immunity is an affirmative defense and, therefore, Roldán, as the defendant, bears the burden of proof. *DiMarco-Zappa v. Cabanillas*, 238 F.3d 25, 35 (1st Cir. 2001) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 815, 818 (1982); *Gómez v. Toledo*, 446 U.S. 635, 639 (1980)). In determining whether a defendant is entitled to qualified immunity, a court must follow the two-part test reiterated in *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). "A court must decide: (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation." *Maldonado v. Fontanes*, 568 F.3d 263, 269 (1st Cir. 2009) (citing *Pearson*, 555 U.S. at 232).

The second step or "clearly established right" test begets its own two-step analysis. *Maldonado*, 568 F.3d at 269. First, the Court must determine whether the "contours" of the constitutional right were "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Then, "focusing concretely on the facts of the particular case, courts examine 'whether a reasonable defendant would have understood that his conduct violated the plaintiffs' constitutional rights.'" *Díaz v. Concepción*, No. 22-1319 (BJM), 2023 U.S. Dist. LEXIS 36164, *19, 2023 WL 2351732, *7 (D.P.R. March 3, 2023) (quoting *Maldonado*, 568 F.3d at 269). "That is, the salient question is whether the state of the law at the time of the alleged violation gave the defendant fair warning that his particular conduct was unconstitutional." *Maldonado*, 568 F.3d at 269.

Here, Roldán argues that the complaint does not allege he was aware of Acevedo's political affiliation. (ECF No. 14 at 16). But that is simply not true. The complaint here plausibly pleads that Roldán felt betrayed by Acevedo when she supported the opposing party's candidate for mayor. (ECF No. 1 ¶ 30). While true, this statement might not "automatically establish" his awareness of Acevedo's affiliation with the NPP, that is not a requirement. "It is not necessary to plead facts sufficient to establish a prima facie case at the pleading stage." *Rodríguez-Reyes*, 711 F.3d at 54. The allegations here

9

are sufficient and Roldán does not meet his burden of establishing he is entitled to qualified immunity.

Moreover, Roldán does not appear to dispute that Acevedo has alleged a violation of her constitutional rights. Nor could he. As discussed above, Acevedo has alleged a violation of her First Amendment rights. It is by now beyond dispute that "non-policymaking public employees are protected from adverse employment decisions based on their political affiliation." *Padilla-Garcia v. Guillermo Rodriguez*, 212 F.3d 69, 74 (1st Cir. 2000) (relying on *Elrod v. Burns*, 427 U.S. 347, 354 (1976); *Branti v. Finkel*, 445 U.S. 507, 516 (1980); *Rutan v. Republican Party*, 497 U.S. 62, 75 (1990)). In turn, "transitory employees are protected from politically motivated non-renewals regardless of the number of years they have served." *Figueroa v. Aponte-Roque*, 864 F.2d 947, 951 (1st Cir. 1989); *see also Padilla-Garcia*, 212 F.3d at 75 n.3 ("It is settled law that the *Elrod-Branti* doctrine extends to a politically motivated non-renewal of a term of employment, regardless of the transitory nature of the position.");*Remus-Milan v. Irizarry-Pagan*, 81 F. Supp. 3d 174, 182 (D.P.R. 2015) (same). Moreover, "[t]he nonrenewal of a transitory employment contract constitutes an adverse employment action." *Velásquez-Vélez v. Molina-Rodríguez*, 327 F. Supp. 3d 373, 379 n.6 (D.P.R. 2018).

Finally, Roldán's argument that his "actions could not be described as illegal beyond debate" (ECF No. 14 at 16), is disconnected from the facts and the law. Roldán's argument is defeated by his own words as alleged in the complaint. According to Acevedo, Roldán told her that he would support his trusted employees "in whatever they do" and that he had been "betrayed" by her when she "actively campaigned" for a PDP candidate for mayor. (ECF No. 1 ¶ 30). When she explained why this would be illegal for, among other reasons, discriminating against her for her political affiliation, he responded with "sue me." (*Id.* ¶ 32). He then followed up with a letter informing Acevedo that her contract would not be renewed. (*Id.* ¶ 36). On this record, a reasonable official would have understood that not renewing Acevedo's contract for political reasons would violate her First Amendment rights. Accordingly, Roldán has failed to show he is entitled to qualified immunity and his request for

dismissal is **DENIED.**

### B. Puerto Rico Law Claims[4]

#### a. Act 90-2020

Defendants argue that Acevedo's claims under Act 90-2020, known as the "Act to Prohibit and Prevent Workplace Bullying in Puerto Rico," must be dismissed because, they are not "employers" under the Act, they did not engage in "workplace harassment," and Acevedo failed to exhaust administrative remedies and alternate resolution methods.[5] (ECF No. 14 at 10-12). For her part, Acevedo does not dispute that she did not exhaust her remedies and argues instead that this is because Defendants did not inform her of such procedures. (ECF No. 24 at 15-18).

First, with regards to bullying, Act 90-2020 "sets forth a strong public policy against any type of workplace bullying that hinders the performance of an employee, alters the peace therein, and undermines the dignity of the workers, regardless of their job category or class." P.R. LAWS ANN. tit. 29, § 3112. The Act prohibits "workplace bullying" inflicted by "an employer, its agents, supervisors, or employees." P.R. LAWS ANN. tit. 29, § 3114 (3). It then defines "workplace bullying" as the

> malicious, unwanted, repetitive, abusive, biased, unreasonable, and/or willful conduct; repeated infliction of verbal, written, and/or physical abuse by an employer, its agents, supervisors, or employees unrelated to the legitimate interests of the employer's business unwelcomed to the targeted employee, and which infringes upon the employee's constitutionally protected rights: the dignity of human beings is inviolable; the protection of law against abusive attacks on his honor, reputation, and private or family life; the protection against risks to his health or person in his work or employment. This workplace bullying conduct creates a threatening, intimidating, humiliating, hostile, and offensive environment that a reasonable person would find

---

[4] Acevedo also brings claims under Sections 1, 4, 6, and 7 of Article II of the Constitution of the Commonwealth of Puerto Rico. (ECF No. 1 ¶¶ 1, 5, 33, 37, 38). Defendants do not move to dismiss these claims. As a result, the Court is in no position to dismiss said claims, however skeletally alleged, against Defendants.

[5] Act 90-2020, establishes that, before filing a civil action, the aggrieved person must follow "the procedure and protocol established by his employer" and if said action is unsuccessful, they shall "resort to the Alternative Dispute Resolution Bureau of the Judicial Branch" and provide "evidence showing that the alternative method has been exhausted." P.R. LAWS ANN. tit. 29, § 3120.

unsuitable to perform his regular duties and tasks.

P.R. LAWS ANN. tit. 29, § 3114 (3). Acevedo's allegations fall within this wide berth.

Second, while the Act defines "employer" broadly, it is not as broad as Acevedo suggests:

**(2) Employer.—** Means any natural or juridical person, the Government of Puerto Rico, including the Executive, Legislative, and Judicial Branches as well as the instrumentalities or public corporations thereof, municipal governments and any of the instrumentalities or municipal corporations thereof that, whether for profit or not, hires personnel for any type of compensation. Moreover, it includes organizations or businesses of the private sector, whether for profit or not, labor organizations, groups, or associations, wherein the employees participate, as well as employment agencies.

P.R. LAWS ANN. tit. 29, § 3114 (2). Here, per her complaint, Acevedo was an employee of the Municipality of Aguadilla. (ECF No. 1 ¶¶ 2, 11, 25, 26). The decision to not renew her contract was made by Roldán. (*Id.* ¶ 29, 36, 44). The decision to not renew exists in tandem with the power to renew a contract. Thus, Roldán is the only "natural person" that could be liable as Acevedo's employer. The Act further makes clear that that an employer "who engaged in workplace bullying" shall not be entitled to immunity "in his personal capacity." P.R. LAWS ANN. tit. 29, § 3115. Thus, Roldán and the Municipality are liable "for the actions of the supervisory personnel, or other employees thereof, which constitute workplace bullying." P.R. LAWS ANN. tit. 29, § 3115. Lausell is not.

Third, the question remains whether Acevedo can proceed without first exhausting her administrative remedies. While the Act does require exhaustion, P.R. LAWS ANN. tit. 29, § 3120, it first requires that employer have established a "procedure and protocol" for the victim of workplace bullying to follow. *Id.* Defendants do not assert that they had established such a procedure for Acevedo to follow. Accordingly, their argument for dismissal on this basis is denied without prejudice. *See Mercado-Vázquez v. Olivera-Olivera*, No. 21-1620 (CVR), 2022 U.S. Dist. LEXIS 191208, *10-11, 2024 WL 1468486, *4 (D.P.R. Oct. 18, 2022) (denying without prejudice request for dismissal of Act 90-2020 where plaintiff alleged the Municipality "did not have an alternative dispute program in place").

Therefore, Lausell's motion to dismiss this claim is **GRANTED, and Roldán's is DENIED**.

**b. Article 1536 of the Puerto Rico Civil Code**

Acevedo's claim under Puerto Rico's general tort statute is also subject to dismissal. Article 1536 of the Puerto Rico Civil Code imposes liability upon "any person who, through fault or negligence, causes damage to another." P.R. LAWS ANN. tit. 31, § 10801.[6] However, "to the extent that a specific labor law covers the conduct for which a plaintiff seeks damages, he is barred from using the same conduct to also bring a claim under Article 1802." *Rosario v. Valdés*, No. 07-1508 (CCC), 2008 U.S. Dist. LEXIS 13113, at *5, 2008 WL 509204, at *2 (D.P.R. Feb. 21, 2008) (relying on *Santini Rivera v. Serv. Air, Inc.*, 137 P.R. Dec. 1, 5, n.3, 16 (1994)); *see Morales-Díaz v. Roldán-Concepción*, No. 22-1319 (BJM), 2023 U.S. Dist. LEXIS 36164, at *26, 2023 WL 2351732, at *9 (D.P.R. Mar. 3, 2023) (dismissing plaintiff's claims under Article 1536 because the plaintiff based "his Article 1536 claim and his Law 90-2020 claims on the same factual allegations"); *Medina v. Adecco*, 561 F. Supp. 2d 162, 176 (D.P.R. 2008) (dismissing plaintiff's claims under Article 1802 because she based "her Article 1802 claim on the same conduct that supports her employment law claims; she allege[d] no independently tortious conduct").

Here, Acevedo bases her Article 1536 and Act 90-2020 claims on the same factual allegations.

---

[6] Here, although the relevant article of the Puerto Rico Civil Code of 2020 is Article 1536, P.R. LAWS ANN. tit. 31, § 10801, some of the applicable case law references Puerto Rico's previous tort statute, Article 1802 of the Puerto Rico Civil Code of 1930. Nonetheless, this District has stated that "Articles 1802 and 1536 have provisions that 'are extremely similar and thus can be used interchangeably.'" *Cabrera v. Romano's Macaroni Grill P.R., Inc.*, No. 22-1449 (MEL), 2024 U.S. Dist. LEXIS 216816, at *10 n.4, 2024 WL 4905665, at *4 n.4, (D.P.R. Nov. 27, 2024) (quoting *Orellano-Laureno v. Instituto Médico del Norte, Inc.*, No. 22-01322 (MAJ), 2023 U.S. Dist. LEXIS 121650 at *14 n.4, 2023 WL 4532418, at *6 n.4 (D.P.R. July 13, 2023)). *See also Dumanian v. FirstBank P.R.*, No. 22-1543 (CVR), 2024 U.S. Dist. LEXIS 12122, at *7 n.4, 2024 WL 197429, at *3 n.4 (D.P.R. Jan. 17, 2024) (noting that Article 1536 "contains the same elements as its predecessor, thereby leaving the tort statute practically unchanged. Therefore, all caselaw referencing or analyzed under the now defunct Article 1802 remains in effect and will be applied to any actions brought pursuant to Article 1536 of the Puerto Rico Civil Code of 2020.").

13

(*See, e.g.,* ECF No. 24 at 15 ("Plaintiff's state law claims arise under the same 'nucleus of operating facts' that foster [her] First and Fourteenth Amendment claims.")). Acevedo's argument that there is no "overlap" because Article 90-2020 penalizes bullying and not political discrimination is of no moment. (ECF No. 24 at 18). The Act includes in its definition of bullying any abuse "unrelated to the legitimate interests of the employer's business unwelcomed to the employee's constitutionally protected rights." P.R. LAWS ANN. tit. 29, § 3114 (3). As such, Acevedo is precluded from bringing suit under Article 1536.

## CONCLUSION

For the foregoing reasons, the Defendants' Motion to Dismiss is **GRANTED** in part and **DENIED** in part.

**IT IS SO ORDERED**.

In San Juan, Puerto Rico this March 30, 2026.

*s/ Mariana E. Bauzá-Almonte*
MARIANA E. BAUZÁ-ALMONTE
United States Magistrate Judge